Good morning. Good morning. Good morning. Would the clerk call the next case, please? Case number 3, file 0832, Dixon Laukitis & Downing, P.C. Appellant by Bill Kohlhaas v. Busey Bank, Appellee by Joseph Van Vliet. Thank you. Mr. Kohlhase, good morning. Good morning, Justice McDade. May it please the court, counsel? It's a basic proposition, Your Honors, that under Illinois law, banks owe a duty of ordinary care to their customers in all of their dealings. That is, as the Seventh Circuit said in the mutual service case, so entrenched in Illinois law that the UCC explicitly requires that the parties may not by agreement abandon that duty. Now, in the trial court, it was the view that it was the plaintiff's obligation to establish that there was some specific authority under the circumstances alleged in the complaint that there was a duty. We submit that the correct perspective and the perspective required by Illinois case law and the UCC is that there is a duty of ordinary care unless there is a specific provision in the UCC that preempts that duty. Isn't that contrary to, in Illinois, what's been phrased as the Mormon doctrine, that if you have these kinds of cases, you don't go to tort, you look at contract? I don't think that that's the case at all, Justice Carter. First of all, there is no question about the application under the UCC itself of a doctrine of ordinary care. If you look at, for example, comment 4 to 4103, you will see that the statement is there that generally a duty of ordinary care applies. Now, in this case, the economic loss doctrine was injected by the trial court in a supplemental order as sort of a last-minute thought. Now, if you think about, first of all, the law is pretty clear that Mormon does not apply if there are extra contractual duties, which is clearly the case here. But if you were to conclude... Well, what are the extra contractual duties? The duty of ordinary care that is implicit in every agreement between a bank and its customer. So are you seeking tort damages? Yes, absolutely. And Mormon deals with whether or not you can recover tort damages in a contractual relationship, correct? It deals with whether or not if your relationship is contractual and your duties are defined by contract, you may recover in negligence. That's what it deals with. But there is no doubt, based on Illinois Supreme Court case law that we discuss in our briefs, Illinois appellate law, the UCC, that there is a duty of ordinary care. If you say that the economic loss doctrine preempts that, then you have changed the basic rules of the UCC and the relationship between banks and their customers, because unless you hit somebody over the head with a check, you're not going to have anything but economic loss in a case like this. And I think the case law just doesn't support the thought that the trial court had at the last minute that somehow Mormon applies. It simply doesn't apply. Mr. Kolles, you have talked about how the duty of ordinary care still supplements the provisions of the UCC unless it specifically has been, it says otherwise. If the UCC doesn't say that it's going to override the common law, then the common law negligence duty of ordinary care still applies. But specific to this case, what provision are you saying hasn't been overridden by the UCC? There is no specific provision in Article IV or Article III of the UCC that directly addresses the allegations that are made in this complaint. We say that there is a general duty of ordinary care. We think that that's clear. In the supplemental order, the trial court said, well, we think that there is some sort of a general remedial scheme here with respect to the collection of items, but there was no articulation in that order of what that general remedial scheme was, how it would be thwarted by recognizing the duty of ordinary care. And there is really, in our estimation, no basis for the conclusion that there's any preemption at all of the duty of ordinary care in these circumstances. But under that duty, what specifically are you saying that the UC Bank failed to do on behalf of your client? What, I guess, you know, what duty did they have underneath the duty of ordinary care? What specifically are you saying that they should have done that they failed to do? The allegations in the First Amendment complaint with respect to the breach of the duty of ordinary care are threefold. The first being the failure to identify the check as a counterfeit item and inform their customer of that. The second being the failure to recognize that under the circumstances, and recall that what's alleged in the complaint is that this is an item that was drawn on a Canadian bank, supposedly of a Canadian insurance company by some agent, and obviously had to be processed through international means. You had questions about whether or not there was a watermark on the check, and questions about this third-party payee of the check under the circumstances. Our allegation is that under those circumstances, particularly where this was a trust account, it was an IOLTA account, the bank knew it was an IOLTA account, so they knew that the funds in this account belonged to clients only. This was not just some commercial account that was owned by the firm that they just hoped that, oh, gee, if this check just clears, we'll have a bunch of money. This was not their money. Under those circumstances, the bank should have said, wait a minute, we can give you provisional credit both under the UCC and under our agreement, but under these circumstances, you better wait until final settlement before any draw against that account. That was not done. We believe that that is a breach of the duty. Finally, it's alleged that there was a failure at the earliest possible time to inform the plaintiff that there was a problem with the check. That may not be stated as fully and artfully as it could be, but what's referenced is if, for example, you look at the Greenberg case, there's a reference to a process whereby through electronic means banks are notified that there is a problem with an item and it will be coming back. We're not talking about ultimate notice of dishonor coming back through the collection system. We're talking about what we think is a reasonable probability that there was a means by which the bank knew that the item was bad. And they didn't tell us. They could have told us they could have withdrawn the provisional credit, assuming that we can prove what we allege. And, of course, we haven't had that opportunity. We haven't had the opportunity to conduct discovery. But those three matters, Your Honor, are what we allege are a breach of duty. So under these circumstances, how do you determine that there's been a breach? Well, it's what is done by other banks in the ordinary course of business, the usual course of business, in the general area where the bank conducts business. That's the standard. And there will be evidence on that. And either that's true or it's not true. But we have not had the opportunity to get to that point. Obviously, we think that we, under the law, are entitled to get there. And, of course, that's why we're asking for reversal. Mr. Culhase, your client had the opportunity to look at that check first. It was given to them. It said, in your complaint, you allege that it said that it wasn't genuine without a watermark. They had the opportunity to check and see if there was a watermark on it. It looks, from the language of the code that's applicable here, that the legislature intended to impose the responsibility for the check on your client rather than on the bank. The language, the structure, the flow of the code appears to be protective of the bank. Your Honor is obviously correct that we had the check first and we could look at it. That's an issue of comparative fault in this negligence case. It is not a bar to the action. With respect to whether or not the risk should be on the customer, I think that the general duty of ordinary care cuts against that, Justice McDade. And also, if you look at the Greenberg case that has been discussed by both parties extensively in their briefs, the discussion regarding who should bear the loss occurs in the final section of the opinion dealing with the equitable estoppel issue where the customer was claiming against both Citibank and HSBC that they should be equitably estopped. In that section of the opinion, the court said, yeah, the customer should bear the loss under those circumstances in the absence of a breach of duty. In the absence of a breach of duty. And, of course, in the prior section, the Court of Appeals of New York held that, yes, there is a common law duty on the part of the collecting bank in those circumstances. But the evidence in that case, and it was on summary judgment, the evidence in that case was that the bank had proved that what they had done was consistent with reasonable commercial standards and that was not rebutted by the customer. Okay, let me ask. Ordinary care is actually set out, the duty of ordinary care, in the Code, in Section 4202. Doesn't the fact that it imposes expressly ordinary care on the collecting bank obviate any argument that there is an additional duty of ordinary care that exists outside of the Code? The only standard in 4202 that displaces negligence is action by the midnight deadline. But if you read the comments, it makes it clear that that standard of meet the midnight deadline is completely different from the standard of whether proper action was taken. If you look at that section, it talks about proper action being taken by the midnight deadline, essentially. The proper action is where the ordinary care issue comes into play. And there is nothing that it deals with presentment and so on. In this case, we're saying the check shouldn't have been presented. Now, that's part of, there's nothing that sets a standard on that. Under these circumstances, our first specification of a breach of duty is the check shouldn't have been put into the system. They should have said, wait a minute, there's a problem here. And as a result, we were damaged. That's why we're here today. There is nothing whatsoever in the account agreement that sets any kind of a standard. There's nothing that preempts this. This plaintiff is entitled under these circumstances, under Illinois law, to have the opportunity to try to prove their case. This would be the first case under these kinds of circumstances to hold this, wouldn't it, under these circumstances? It would be the first case to address this particular issue. But there is no contrary case, Your Honor. All of the other cases deal with claims that I was told the check cleared, some kind of misrepresentation type of issue. But it's certainly not the first case, will not be the first case to hold that ordinary care applies and we're entitled to the opportunity to prove our case. No, but I'm talking about in these kinds of circumstances where you're giving, where you say give rise to a tort. This would be the first case, certainly after Mormon, that would do something like this and say this is turned into a tort damage case. Oh, no. The case is Wilder Bindings, a negligence case. The Continental Casualty case is a negligence case under the UCC. No, it would certainly not be the first. Under these circumstances. Right. But this is like, you know, we have an accident at a different intersection or a different law applies. It's still a negligence case. We're absolutely entitled to move forward. Thank you. My time is up. Thank you. Mr. Van Fleet, good morning. Good morning, Your Honor. Thank you. If it pleases the court, clerk, counsel, and honored guests who may very well one day be the future of this process. And thank you, by the way, Justices, for allowing us to be part of this program. Our issue here, and there's a lot that we agree on in this case. There's certainly some very important things that we disagree on. I mean, we're in agreement on the underlying facts. There's a terrible, terrible fraud perpetrated against this plaintiff. We all agree on that. They're a victim here. We agree with that. The problem is. A $270,000 victim. Absolutely, Your Honor. And that's a terrible thing. But we also need to understand the bad guy, the perpetrator of this fraud, wasn't in the trial court and isn't in the room here today. There are no allegations that Busey Bank is the bad guy here that took any role in perpetrating the fraud. There are no allegations of intentional conduct or anything. We don't really disagree with the facts. What we disagree with, I think, is the framing of the issue on appeal. Now, in the appeal itself, the plaintiff appellant says the question is, does the amended complaint state a cause of action for negligence? And in their argument at both the trial level and again today and in the briefs, what they're really trying to do is put the concept of negligence on trial. This is a negligence case. Let's stand on the hill of a mountain, on the peak of a mountain, and look at this case and say negligence doesn't go away, whether in the banking industry or not. The problem is that's not really the question before the court. The question is one of duty. The question is the way that the plaintiff has alleged his complaint, in other words, allegations by a negative, which always means, that's always a trigger that you look, is there a duty? When they're alleging these three things weren't done, therefore we're damaged because these three things should have been done, well, that's a clear indication at the initial pleading level that we need to take a look, well, did the defendant have a duty to do those three things? And the trial court very clearly believed UC Bank did not have the duty to do that. What are those three things? Well, basically inquire about the check, investigate the check, and notify the plaintiff that there's a problem with the check. That's what I'm talking about. In essence, that's what they're saying our negligent conduct was. And I understand that you filed your motion to dismiss under both 2615 saying that this just couldn't stand, or also under 2619 that there were defenses to that. And I think that that's where the plaintiff is coming from is that they haven't gotten their opportunity yet to say what duty exactly was breached. At least that's sort of what I'm saying. Now, the judge specifically just found under 2615 that there was a dismissal, and it didn't address 2619. Do you feel that the outcome would be any different, no matter how we looked at it, if we said that they should have been able to present a little more information and then getting to 619? Do you think either way you're- That's a very good question, Your Honor. Let me shed some light on that. At the trial level, Judge Dubicki was very clear that he rarely, in fact, I think he said he couldn't recall a time where he has granted 2619 relief at trial. He simply was diametrically opposed to granting it. He believed those questions were better answered on summary judgment. And that's why we don't see a 2619 order in this case. I believe Judge Dubicki did a 2619 analysis of the case in looking at the contract and in looking at the affidavits. But that's, I believe, just because of a fundamental issue he has with Section 219. We don't see a 219 order here. Do I think it would be different? The answer to that is no. In his 216 analysis, recall, he gave the plaintiff a second time to plead. And the two questions the court asked that plaintiff, the two questions on both levels of the motion to dismiss, are the two questions that counsel heard before this court. Number one, is there any case or any authority out there where, in a fraudulent check scheme, the bank is held to have a duty to inquire, a duty to investigate, and a duty to inform? I mean, I think the answer was the same the trial court is today. The answer to that is no. You can argue by analogy on other cases. Again, let's stand on the mountain and call this a negligence case. But in reality, when you look at, as the Greenberg case tells us to do, when you look at the realities of the modern-day banking system, we need to do that in this case and look at the duty. And no authority out there holds that UC Bank had that duty. Now, the second part, the 216 part of that analysis was this. Judge Dubicki, I believe, said you need to come back and replead because you're saying there's this separate duty of ordinary care out there, and you're defining it, you're taking language out of the UCC, and you're calling it a customary practice in the area where you work. And that's how you're defining it. Well, again, you're pleading in the negative. So you need to give us a little more about this duty and about this area. And the problem is, after two opportunities, the plaintiff couldn't even define the area. What does area mean? Is it geographic? Is it metaphoric? They were never able to define what area means in that definition, let alone what customary practices are. So that's my long-winded answer to your question, Justice. I don't think the analysis would have been any different, and I certainly don't think the result would have been different. Thank you. Mr. Van Fleet, what in the code relieves Bucey Bank of its ordinary duty, I mean the duty of ordinary care? I think that's a good question. What in the code is simply, and I know what the trial court said. The trial court said Section 214, or rather 4214. The trial court said, and cites the Greenberg case and adopts its analysis, the trial court said this case involves the check collecting process, period, end of day. Section 214 prescribes the duty of care and what a bank needs to do, a collecting bank needs to do during the check collecting process. But Bucey Bank originally was a depository bank, and it accepted the check. Correct. Why did it not have some obligation to look at it and see whether it was a good check? Well, you're asking from the UCC. The UCC tracks language that we also see in the contract. I think whether you look at the contract or the UCC, the analysis is the same. That comes to the two terms in our contract. It says right there, your credit is provisional until the entire check collecting process is done. The second term, equally clear. Any shortages resulting from any chargebacks we, as the collecting or depository bank, need to do is on you. And, again, the case law is clear. The cases that we've cited, this is a clear risk of loss on the bank customer. And I understand that. It's just that, as Mr. Colhase explains it, the plaintiff's allegation of failure of ordinary care comes in the area of presentment, where the bank is acting as a depository bank. You're focusing on the area where it's a collecting bank. And so you're looking at an entirely different point in the process than they are. And I guess my question is, where in the code are you relieved, or is UC Bank relieved as a depository bank of the duty of ordinary care? And I guess my answer to that is we're assuming right now, because of the plaintiff's argument, that these are two separate points in time and two separate processes. I don't believe they are. I don't think the bank has two different hats, depository and collecting bank. I think both of those hats are on the moment the check is handed to the bank. I think, yes, we're the depository bank, but we're also the collecting bank, and that begins the collection process under Article 214. But UC Bank doesn't become a collecting bank until it forwards the check to the clearinghouse. Correct. Or to the intermediary bank. So it's not a collecting bank at the time of presentment. Correct. Okay. Correct. And, again, I'll point to the contract. And remember, the UCC Article 201 still says the same thing, and 214. Both contain the same language that we find in our contract. So I would refer back to those sections that say when credit is provisional and when the bank has the right to charge back any shortages resulting of the collection process, the risk of loss is on the customer. I think that's what those two sections say, and it's also what our contract says. Okay, but that doesn't talk about the time of presentment, which is what they're focusing on. But I think the contract does. The contract doesn't limit itself to the collecting process at all. This is the account contract we're referring to. This is the contract that the customer signs when the account's open. I think it refers to all points in time. Okay. Other questions? No. Okay. Do you have additional argument? I think it's also important to talk about the case law. We haven't discussed the Sibley case. Let's keep in mind what the plaintiff is arguing here. The plaintiff is arguing there is a common law negligence claim against the bank that survives outside of the UCC and outside of the sections that we keep citing that protect the bank. Well, Sibley couldn't be more than common law. The counsel argues that we don't look at Sibley because of how old it is. It's from 1922. It predates the UCC. My answer to that is when we're talking about common law, we need to look at that case that tells us these arguments have been rejected all the way back to 1922. And I will also add, yes, and I understand the case law that says cases that predate 1935 have limited precedential value doesn't mean it has limited persuasive value. And I will also say that that case has been cited by the Illinois Practice Series as recently as 2012 in the latest edition on the issue of the check collecting process. So I don't think we've seen anything that suggests Sibley has been negatively treated on these issues since it came out in 1922. The Greenberg case, the attempt to distinguish Greenberg, which is the case cited to and relied upon by the trial court in its order. I don't think we can dismiss the Greenberg case as inapplicable because of the language at the end. What counsel is trying to do is... That's a New York case. I'm sorry, a New York case, yes, from the highest court in New York. Factually, it couldn't be closer. It's the exact same type of fraudulent scheme we have in this case. The same arguments are made. Which section and which headline in that opinion we find the language under, I don't think matters. We still have a depository and a collecting bank facing a common law negligence claim, and I think that case is very clear. Under this scheme, it doesn't apply. We also haven't talked about the Ronan case. That's from the Supreme Court of Montana. Now, that didn't involve a law firm. But the same analysis still applies in Ronan. That involved a Nigerian scam, which is equally prevalent today. And that case still says the same thing. That case went even further than what we're asking this court to do. The Supreme Court of Montana said these common law negligence claims are preempted by the UCC. Substantially similar UCC provisions to what we have here. We also need to talk about the Mormon doctrine. I don't believe the Mormon doctrine was a complete afterthought. I think it was raised on more than one occasion by the trial court. And to distinguish the Mormon doctrine from our situation by virtue of an extra-contractual relationship, I think that argument is disingenuous. Because we're trying to analogize those cases to legal and accounting malpractice cases. And that's not the analogy here, because the case law is very clear. A bank is not a fiduciary to its customer. So that extra-contractual relationship doesn't occur. Lawyers and accountants are fiduciaries to their clients. Banks are not. And in a highly regulated industry today, the law still holds that concept true, that banks are not fiduciaries. Attorneys and accountants do have extra-contractual relationships with their customer. Banks don't. Thank you. I have a follow-up question to Justice McDade's questions earlier regarding the presentment. What you're saying is that whether or not they had any duty to check that, to check for its watermark or its authenticity, that because of the provisions regarding the provisional credit and the 24-hour rule, that the presentment and what duty they owe really doesn't have any connection on the other end, because the provisions of the contract are so clear that, you know, whether they had looked at it and thought it was legitimate, failed to look at it, had any duty, whatever, that at the end of the day, until that check clears, there is, you know, that is a loan to the account holder. Until that, you get the check back that, you know, there is no guarantee of funds until it has actually come all the way back. I think there are several layers on which you can analyze that. The answer to your question is yes. I also believe you need to look at the contract. But I also think we need to look at the common law. Keep in mind, the Sidley case and the Greenberg case both didn't just have a situation where the customer hands the check to the bank teller and that starts the process. They go one step further in those cases. Those cases have the bank teller saying, oh, yeah, this check is good. I mean, they had better facts in those cases seeking a common law negligence claim than we have here. And those cases still said there's no duty. Under common law, there's no duty. They didn't necessarily rely. The entire opinion didn't rely on Section 214 of the UCC. I think we look at three different layers on this. The UCC protects the bank. The contract protects the bank. And when we look at the case law that we have and authority that we have, the common law duty to investigate, inquire, and notify a customer that there's a problem with the check simply doesn't exist. Thank you. Thank you. Thank you, Mr. Van Vliet. Mr. Kohlhase. Thank you, Justice McDade. A couple of quick quotes, if I may. Comment 454103 of the UCC. Under this article, banks come under the general obligations of the use of good faith and the exercise of ordinary care. It can't be plainer. 54214D2. The right to charge back is not affected by two, failure by any bank to exercise ordinary care with respect to the item, but a bank so failing remains liable. 4214D2. Their contract, to the extent it's relevant here, is at C50 in the record. In a circumstance like this, all I can say is I've read it, he's read it, you've got to read it, too, because what he's saying ain't there. C50. With respect to these other cases, I sound like a broken record here. You read Greenberg and follow it, we win. You read Ronan and follow it, we win. Those cases favor us, both of them. Are they both New York cases? Pardon me? Are those New York cases? Greenberg's New York, Ronan's Montana. Okay. And do we know whether those two states have adopted the same version of the UCC that Illinois has? We do. The answer is yes. Okay. With respect to the idea that tellers were saying in these other cases the checks are good, those aren't the allegations. The allegations are that someone said the check has cleared. That's a different circumstance. Those allegations relate to the check clearing. With respect to Moorman, it's discussed at length in the briefs, but if you look at the quote from Touche Ross on page 18 in our brief, the Illinois Supreme Court makes it clear that it doesn't apply to extra-contractual duties. Your Honors, we thank you for your time and attention. We ask on behalf of our client, the plaintiff, that this case be reversed and remanded to the trial court for further proceedings. Thank you. Are there any other questions for Mr. Kullhys? Okay. Thank you. We thank both of you for your arguments this morning. We'll take the case under advisement and we'll issue a written decision as quickly as possible. The court will now stand in recess. All rise.